UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

WILLAMS ARTURO POLANCO,

                         Plaintiff,

      -against-

PROTECTIVE INSURANCE COMPANY,

                         Defendant.
-------------------------------------------------------------------X

**Civil Action: 1:23-cv-00062**

---

**MEMORANDUM OF LAW
IN OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT**

---

**FORTUNATO & FORTUNATO, PLLC**
Attorneys for Plaintiff
26 Court Street, Suite 1301
Brooklyn, New York 11242
Phone: (718) 858-4366
Email: r.gill@fortunatolawfirm.com

## PRELIMINARY STATEMENT

Plaintiff WILLAMS ARTURO POLANCO respectfully submits this Memorandum of Law in the defendants' motion pursuant to Federal Rule of Civil Procedure 56, seeking summary judgment.

As will be demonstrated, *infra*, in the discussion section, where the precedents briefly referenced in this introduction are fully cited and quoted, "Summary judgment is appropriate where the admissible evidence and pleadings demonstrate 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' [citations omitted]. A dispute over an issue of material fact qualifies as genuine 'if the evidence is such that a reasonable jury could return a judgment for the nonmoving party.' [citations omitted]. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. [citations omitted]. 'In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.' [citations omitted]. In ruling on a motion for summary judgment, all evidence must be viewed 'in the light most favorable to the non-moving party,' [citations omitted], and the Court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought,' [citations omitted]." Lockhart v. Long Is. R.R. Co., 266 F.Supp3d 659, 662 (S.D.N.Y. 2017); see Brown v. City of New York, 862 F.3d 182, 189 (2d Cir. 2017); Rodriguez v. Vil. Green Realty, Inc., 788 F.3d 31, 39–40 (2d Cir. 2015).

Respectfully, "*In accordance with the liberal interpretation afforded the term*

'occupying'" (Rosado v. Hartford Fire Ins. Co., 71 A.D.3d 860, 860-861, 897 N.Y.S.2d 173, 173-174 (2d Dep't 2010)), as testimony that a driver "*exited from his parked vehicle intending to help his friend make a delivery of food he was unloading from a minivan that was parked across the street*," but "*When his friend declined his offer of help, the appellant turned and walked back to his vehicle*," at which point he was struck by another vehicle, it was determined that "*Issues of fact exist as to whether the appellant had departed from his vehicle incident only to some temporary interruption in the vehicle's journey so that his original occupancy could be deemed continuing in nature*" (Matter of Travelers Prop. Cas. Co. v. Landau, 27 A.D.3d 477, 477-478. 811 N.Y.S.2d 427, 427-428 (2d Dep't 2006)), clearly, Mr. Polanco's testimony and attestation in interrogatory responses herein indicating, "I unloaded the products I was to deliver from my truck onto a hand truck ... I intended to immediately return to my vehicle as quickly as possible, at all times remaining in the immediate vicinity of my vehicle ... Upon completion of the objective of the delivery, a brief interruption of my journey, I intended to resume my place in the vehicle and continue my delivery route," raises similar questions of fact on this issue, mandating denial of PROTECTIVE INSURANCE COMPANY's motion for summary judgment and the holding of an evidentiary hearing or trial to determine the issue.  See Landau, 27 A.D.3d at 477-478. 811 N.Y.S.2d at 427-428; Rice v. Allstate Ins. Co., 32 N.Y.2d 6, 10-11, 342 N.Y.S.2d 845, 848-849, 295 N.E.2d 647, 649 (1973); Cont. Cas. Co. v. Lecei, 65 A.D.3d 931, 931-932, 885 N.Y.S.2d 285, 286 (1st Dep't 2009); In re Arbitration Between Travelers Ins. Co., 13 A.D.3d 1044, 1045, 787 N.Y.S.2d 475, 476 (3d Dep't 2004).

## STATEMENT OF FACTS

The facts underlying the instant motion are fully set forth in Ronald W. Gill's FRCP 51(b) Statement and will not be repeated at length in this memorandum of law.

## DISCUSSION

### I.   THE STANDARDS APPLICABLE TO THE DETERMINATION OF THE DEFENDANT'S SUMMARY JUDGMENT MOTION:

"Summary judgment is appropriate where the admissible evidence and pleadings demonstrate 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine 'if the evidence is such that a reasonable jury could return a judgment for the nonmoving party.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). 'In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.' *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548); *accord PepsiCo, Inc. v. Coca–Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). In ruling on a motion for summary judgment, all evidence must be viewed 'in the light most favorable to the non-moving party,' *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the Court must 'resolve all

ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought,' *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)." Lockhart v. Long Is. R.R. Co., 266 F.Supp3d 659, 662 (S.D.N.Y. 2017); see Brown v. City of New York, 862 F.3d 182, 189 (2d Cir. 2017); Rodriguez v. Vil. Green Realty, Inc., 788 F.3d 31, 39–40 (2d Cir. 2015).

**II.     IN ACCORDANCE WITH THE LIBERAL INTERPRETATION AFFORDED THE TERM 'OCCUPYING,'" THE PRESENT FACTS MANDATE DENIAL OF PROTECTIVE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND THE HOLDING OF AN EVIDENTIARY HEARING OR TRIAL TO DETERMINE THE ISSUE:**

The New York State Court of Appeals and New York State Appellate Divisions have recognized that, for purposes of SUM coverage, "*Where a departure from a vehicle is occasioned by or is incident to some temporary interruption in the journey and the occupant remains in the immediate vicinity of the vehicle and, upon completion of the objective occasioned by the brief interruption, he intends to resume his place in the vehicle, he does not cease to be a passenger [or occupant]* [citations omitted]." Rice v. Allstate Ins. Co., 32 N.Y.2d 6, 10-11, 342 N.Y.S.2d 845, 848-849, 295 N.E.2d 647, 649 (1973); see State-Wide Ins Co v. Murdock, 25 N.Y.2d 674, 676, 254 N.E.2d 908, 306 N.Y.S.2d 678 (1969); State-Wide Ins. Co. v Murdock, 31 A.D.2d 978, 978-979, 299 N.Y.S.2d 348 (2d Dep't), *aff'd*, 25 NY2d 674, 306 N.Y.S.2d 678, 254 N.E.2d 908 (1969); Cepeda's Estate v. U. S. Fid. & Guar. Co., 37 A.D.2d 454, 456, 326 N.Y.S.2d 864, 866 (1st Dep't 1971).

In Rice, 32 N.Y.2d at 10-11, 342 N.Y.S.2d at 848-849, 295 N.E.2d at 649, citing Murdock, 25 N.Y.2d at 676, 254 N.E.2d at 908, 306 N.Y.S.2d at 678 and Cepeda's Estate, 37

A.D.2d at 456, 326 N.Y.S.2d at 866, held that the critical issue in determining whether an occupant who leaves a vehicle shortly before an accident is the occupant's "*intention to return to the car*":

> "To the extent only that claimant had just left the Hunt vehicle, we note similarity with the factual background in Estate of Cepeda v. United States Fid. & Guar. Co. (37 A.D.2d 454, 326 N.Y.S.2d 864, Supra) wherein the status of a passenger continued despite a departure from the vehicle, a departure which was brief and did not extend beyond the immediate vicinity of the car. *There, however, the claimant had every intention to return to the car. Where a departure from a vehicle is occasioned by or is incident to some temporary interruption in the journey and the occupant remains in the immediate vicinity of the vehicle and, upon completion of the objective occasioned by the brief interruption, he intends to resume his place in the vehicle,* he does not cease to be a passenger (Estate of Cepeda v. United States Fid. & Guar. Co., Supra; State-Wide Ins. Co. v. Murdock, 31 A.D.2d 978, 299 N.Y.S.2d 348, affd. 25 N.Y.2d 674, 306 N.Y.S.2d 678, 254 N.E.2d 908, Supra)."

Id. (emphasis added).

In Cepeda's Estate, 37 A.D.2d at 456, 326 N.Y.S.2d at 866, the Appellate Division, First Department, reiterated the standard for determining whether a person, formally the driver or occupant of a vehicle, is covered by its SUM or UIM policy after he or she leaves the vehicle:

> "The question presented by these facts is whether the decedents by stepping out of Giron's car in the manner in which they did ceased to be passengers and hence to have the coverage of Giron's insurance. *Not every physical departure from the vehicle results in termination of status as a passenger* (Matter of Allstate Ins. v. Flaumenbaum, 62 Misc.2d 32, 308 N.Y.S.2d 447; Matter of Shindler v. MVAIC, 41 Misc.2d 590, 245 N.Y.S.2d 90; Matter of MVAIC v. Oppedisano, 41 Misc.2d 1029, 246 N.Y.S.2d 879). *Where the departure is incident to some temporary interruption in the journey of the vehicle, as when there is a mechanical failure and the passenger gets out to help or even to observe the work of the driver, he does not cease to be a passenger* (State-Wide Insurance Company v. Murdock, 31 A.D.2d 978, 299 N.Y.S.2d 348; Matter of Pagan (MVAIC), 51 Misc.2d 664, 273 N.Y.S.2d 740). The situation here is indistinguishable. *Where the passenger alights following some temporary interruption at a place other than his destination, remains in the immediate vicinity of the vehicle and there is every reason to believe that, had it not been for the accident, he would shortly have resumed his place in the vehicle, his status as a passenger has not changed*."

Id. (emphasis added).

Since Cepeda's Estate, 37 A.D.2d at 456, 326 N.Y.S.2d at 866, Appellate Division, Second and Third Department precedents decided as recently as June 15, 2022, directly addressing the applicability of SUM coverage to an accident involving the occupant of a truck or other vehicle who temporarily alights before reaching his or her final destination, such as to make deliveries, inspect for damage or assist with repairs, with the intent to return to the vehicle, hold that an SUM policy applied as the alighting occupant was still an occupant covered by the SUM policy:

> "*The SUM endorsement in petitioner's policy* provides that an individual is an 'insured' if, among other things, he or she is 'occupying' a covered motor vehicle. . . .
>
> *Under the circumstances, we conclude that respondent, who had just exited the vehicle and was in the process of unloading the van to make his delivery*, had not yet severed his connection with the van and was [covered at the time of the accident]."

In re Arbitration Between Travelers Ins. Co., 13 A.D.3d 1044, 1045, 787 N.Y.S.2d 475, 476 (3d Dep't 2004) (emphasis added); see Progressive Advanced Ins. Co. v. Talmadge, 206 A.D.3d 831, 832, 168 N.Y.S.3d 343, 344-345 (2d Dep't 2022); Matter of Govt. Employees Ins. Co. v. Nakhla, 140 A.D.3d 762, 764-765, 32 N.Y.S.3d 614, 617 (2d Dep't 2016); Rosado v. Hartford Fire Ins. Co., 71 A.D.3d 860, 860-861, 897 N.Y.S.2d 173, 173-174 (2d Dep't 2010); Cont. Cas. Co. v. Lecei, 65 A.D.3d 931, 931-932, 885 N.Y.S.2d 285, 286 (1st Dep't 2009); Matter of Travelers Prop. Cas. Co. v. Landau, 27 A.D.3d 477, 477-478. 811 N.Y.S.2d 427, 427-428 (2d Dep't 2006).

In Landau, 27 A.D.3d at 477-478. 811 N.Y.S.2d at 427-428, the Appellate Division, Second Department, addressed the following facts and circumstances, similar to those of the instant action but less favorable to the injured occupant:

"The evidence ... revealed that the appellant *exited from his parked vehicle intending to help his friend make a delivery of food he was unloading from a minivan that was parked across the street. When his friend declined his offer of help, the appellant turned and walked back to his vehicle. As he was preparing to re-enter his vehicle,* he was struck *from behind by a minivan* driven by Nuchem Grunhut."

Id. (emphasis added).  Addressing the evidence that the occupant "*exited from his parked vehicle intending to help his friend make a delivery of food he was unloading from a minivan that was parked across the street*," the Appellate Division, Second Department held that issues of fact existed that were properly determined upon a full evidentiary hearing:

> "*Issues of fact exist as to whether the appellant had departed from his vehicle incident only to some temporary interruption in the vehicle's journey so that his original occupancy could be deemed continuing in nature* (see *Matter of Nassau Ins. Co. [Maylou],* 103 A.D.2d 780, 477 N.Y.S.2d 415; *State–Wide Ins. Co. v. Murdock,* 31 A.D.2d 978, 299 N.Y.S.2d 348; compare *Matter of Coregis Ins. Co. v. McQuade,* 7 A.D.3d 794, 779 N.Y.S.2d 497; *Matter of State Farm Auto. Ins. Co. v. Antunovich,* 160 A.D.2d 1009, 1010, 555 N.Y.S.2d 231), or, if not, whether, at the moment he was struck, the appellant was actually in the process of "entering into" his vehicle or merely intending to do so (see *Rowell v. Utica Mut. Ins. Co.,* 77 N.Y.2d 636, 638–639, 569 N.Y.S.2d 399, 571 N.E.2d 707)."

Id. (emphasis added).

In Lecei, 65 A.D.3d at 931-932, 885 N.Y.S.2d at 286, the Appellate Division, First Department addressed the following divergent accounts of an accident:

> "Prior to the hearing on November 13, 2008, Mr. Hall had consistently stated, orally on March 25, 2005 [R. 95-96, 102-3], in his own handwriting on or about April 12, 2005 [R. 114-5], to others on June 16, 2005 [R. 116-20], and in a sworn affidavit on March 10, 2006 [R. 121-4], that *Respondent had left his vehicle, placed cones in the roadway and was walking away from his truck at the time the accident occurred.*

> On the date of the hearing, 3 1/2 years later, Mr. Hall was called as a witness by the Respondent and suddenly changed his testimony, apparently having deduced, or otherwise been informed, that the issue of the presence of cones was important to Respondent. [R. 100] ("since it is such a big issue here now"). He testified, for the first time, that *there were no cones in the roadway prior to the accident and that he placed cones in the roadway after the accident.* [R. 95]."

Cont. Cas. Co. v. Lecei, Brief for Petitioner, 2009 WL 7630364, at *4-5 (July 13, 2009) (emphasis added).  Upon these accounts, the Appellate Division held that a question of fact as to whether "*Respondent had left his vehicle, placed cones in the roadway and was walking away from his truck at the time the accident occurred*" or respondent had not yet placed the cones and walked to the safety of the sidewalk as "*there were no cones in the roadway prior to the accident and that he placed cones in the roadway after the accident*" permitted the finder of fact at the evidentiary hearing to rule the plaintiff remained an occupant of the vehicle:

> "*The Special Referee's finding that respondent was "occupying" the truck within the meaning of the policy is substantiated by respondent's testimony that he was alighting from the truck when he was struck by a passing motorist. Contrary to petitioner's contention, the evidence supports the conclusion that respondent was "still vehicle-oriented" at the time he was injured* (see Matter of Rice v. Allstate Ins. Co., 32 N.Y.2d 6, 11, 342 N.Y.S.2d 845, 295 N.E.2d 647 [1973]). *There is no basis to disturb the Special Referee's credibility findings regarding the hearing testimony and prior inconsistent statements of respondent's coworker* (see Kardanis v. Velis, 90 A.D.2d 727, 727, 455 N.Y.S.2d 612 [1982])."

Lecei, 65 A.D.3d at 931-932, 885 N.Y.S.2d at 286 (emphasis added).

In Rosado, 71 A.D.3d at 860-861, 897 N.Y.S.2d at 173-174, the Appellate Division, Second Department addressed the following facts, similar to but less favorable to the injured person than those at bar:

> "*The instant action is one for uninsured motorist benefits* sought by the plaintiff in connection with an accident which occurred on May 13, 2004 when plaintiff, while standing outside of the truck he utilized for his job making deliveries, was struck by a box truck and injured. Subsequent to the accident, Countrywide Insurance, the carrier for the box truck's owner, tendered its full policy of $25,000 to plaintiff. Thereafter, in lieu of filing a demand for arbitration, plaintiff filed the instant lawsuit seeking to recover underinsured motorist benefits under the SUM endorsement of the policy issued by Hartford Co. to plaintiff's employer, Windmill Distributing Company, LP, doing business as Phoenix Beverages, Inc. (Phoenix), which insured the truck plaintiff utilized to make deliveries. The Hartford Co. Policy provides underinsured motorist benefits up to

9

$1 million to the "insured" and "any other person occupying a motor vehicle insured for SUM under this policy."

*At his deposition, plaintiff testified that he was employed by Phoenix on the date of the accident. His job duties at that time consisted of driving a beer truck and distributing beer products to various establishments such as bars and beer distributors.* On the date of the accident, he traversed the delivery route to which he had been assigned for at least a week.

He testified that the first stop along his route on that day was the Europa Bar located on Meserole Avenue in Brooklyn, New York. He was accompanied by a co-worker who rode as a passenger in the subject delivery truck and would assist plaintiff in delivering the beer products at each stop along the route.

The beer products to be delivered were located in 12 separate bays in the rear of the truck, 6 on either side of the truck. The bays were accessed via six separate gates, which would go up and down on either side of the truck. There was no access to the bays at the very rear of the truck. The truck itself was about 25 to 30 feet in length.

Plaintiff stated that when he arrived at the Europa Bar, he initially parked adjacent to a bus stop on the right side of Manhattan Avenue, south of its intersection with Meserole Street. *After parking, he shut off the ignition and exited the truck after putting on the hazard lights. He removed cases of beer from the third bay on the driver's side of the truck, which faced the moving lanes of traffic, and placed the cases onto a hand truck. He closed the door to the bay and proceeded to transport the cases in his handtruck to the corner of Meserole and Manhattan Avenue to deliver the products to Europa Bar. At the Europa Bar, he took the cases of beer off the handtruck and placed empty cases on the handtruck to take back to the delivery truck.*

When he arrived at the delivery truck, he unlocked the third bay, raised the gate, placed the empty cases on the street, unloaded full cases from the truck, placed the full cases on his hand truck, and then proceeded to load the empty cases into the third-bay. He closed the gate to the third bay and locked it.

*Plaintiff testified that upon his return to the delivery truck, he encountered a police officer who asked him to move the truck because he was parked illegally at a bus stop. He moved the truck in the same direction down Manhattan Avenue and parked in front of a fire hydrant.* When he exited the truck he again shut off the engine and turned the hazard lights on. *He stated that he then walked with his co-worker, each of them moving various beer products on their handtrucks, as they proceeded back to the Europa Bar.*

*After making his second delivery to Europa Bar, he wheeled the hand truck back to the driver's side of the delivery truck. He proceeded to open the locked third bay of the truck*

10

*so that he could place within it the empty cases of beer which he had retrieved from the Europa Bar. At the time of the accident, he had not yet placed any of the empty cases from the hand truck in the bay of the delivery truck.* He was looking into the third bay of the truck when he was struck by the box truck and his hands were maneuvering the empty cases already located in the third bay of the truck. He was not leaning into the bay very much because there were many cases of beer on the truck and he did not have to lean to reach them.

*He further testified that approximately 10 minutes passed from the time that he exited the subject vehicle after moving to the fire hydrant location and the time that the accident occurred.* He also stated that his co-worker was still in the Europa Bar when the accident occurred. When he was struck by the box truck, plaintiff was pushed approximately 10 to 12 feet and was pinned between his delivery truck and the box truck until he came to a stop lying up against the first bay of the truck on the driver's side."

Rosado v. Hartford Fire Ins. Co., 872 N.Y.S.2d 693 (Table), 21 Misc.3d 1102(A), 2008 WL

4303151, at *1-2 (Sup.Ct Kings Co. Aug. 18, 2008), *aff'd in part, rev'd in part*, 71 A.D.3d 860,

860-861, 897 N.Y.S.2d 173, 173-174 (2d Dep't 2010) (emphasis added).  Upon these less

favorable facts, the Appellate Division, Second Department determined, as a matter of law, that

the injured delivery driver who was in the act of returning to his delivery truck after making a

delivery on the opposite side of the street, was entitled to coverage under his employer's

UIM/SUM policy:

"The plaintiff Jesus Rosado (hereinafter the injured plaintiff) allegedly was struck by a box truck while standing outside of his delivery truck. At the time of the accident, the injured plaintiff was standing with his feet on the pavement, reaching with his hands into a side bay of the delivery truck to rearrange empty cases of beer. When the box truck hit the plaintiff, it pushed him approximately 10 to 12 feet, pinning him between his delivery truck and the box truck, until he came to a stop against the first side bay of the truck on the driver's side.

The insurance carrier for the box truck, Countrywide Insurance,  thereafter tendered to the injured plaintiff the full policy amount of $25,000. *In lieu of filing a demand for arbitration, the plaintiffs commenced the instant action to recover underinsured motorist benefits under the Supplementary Uninsured/Underinsured Motorist (hereinafter SUM) endorsement of the insurance policy issued by the defendant Hartford Fire Insurance Co. to the injured plaintiff's employer, Windmill Distributing Company, LP, doing business as*

11

*Phoenix Beverages, Inc. Under the SUM endorsement, the defendant provided underinsured motorist benefits up to the sum of $1,000,000 to the "insured" and "[a]ny other person ... occupying ... a motor vehicle insured for SUM under this policy."* The SUM endorsement of the defendant's policy, consistent with the statutory requirement, defines "occupying" as "in, upon, entering into, or exiting from a motor vehicle" (*see* Insurance Law § 3420[f][3] ).

*In accordance with the liberal interpretation afforded the term "occupying"* (*see Rowell v. Utica Mut. Ins. Co.,* 77 N.Y.2d 636, 639, 569 N.Y.S.2d 399, 571 N.E.2d 707), *we find, as a matter of law, that the injured plaintiff was "in" or "upon" the delivery truck at the time of the accident such that he was "occupying" the delivery truck within the meaning of the SUM endorsement* (*cf. Matter of Rice v. Allstate Ins. Co.,* 32 N.Y.2d 6, 11, 342 N.Y.S.2d 845, 295 N.E.2d 647; *Matter of Travelers Prop. Cas. Co. v. Landau,* 27 A.D.3d 477, 811 N.Y.S.2d 427; *Matter of Travelers Ins. Co. [Youdas],* 13 A.D.3d 1044, 787 N.Y.S.2d 475; *Matter of Coregis Ins. Co. v. McQuade,* 7 A.D.3d 794, 779 N.Y.S.2d 497; *Matter of Travelers Ins. Co. v. Wright,* 202 A.D.2d 680, 609 N.Y.S.2d 642; *Matter of State Farm Auto. Ins. Co. v. Antunovich,* 160 A.D.2d 1009, 555 N.Y.S.2d 231).

Accordingly, *the Supreme Court erred in denying that branch of the plaintiffs' cross motion which was, in effect, for summary judgment on the issue of liability on the first cause of action.* For the same reasons, the Supreme Court properly denied the defendant's motion for summary judgment dismissing the complaint."

Rosado, 71 A.D.3d at 860-861, 897 N.Y.S.2d at 173-174 (emphasis added).

In Nakhla, 140 A.D.3d at 764-765, 32 N.Y.S.3d at 617, the Appellate Division, Second Department held "*Nakhla was an occupant of the taxicab at the time of the second impact,*" where "*he alighted from the taxicab after the first impact to determine whether it had been damaged*" and intended to return to the taxicab:

"*The question is whether "a departure from a vehicle is occasioned by or is incident to some temporary interruption in the journey and the occupant remains in the immediate vicinity of the vehicle and, upon completion of the objective occasioned by the brief interruption, he intends to resume his place in the vehicle*" (*Matter of Rice v. Allstate Ins. Co.,* 32 N.Y.2d 6, 10–11, 342 N.Y.S.2d 845, 295 N.E.2d 647). Here, GEICO established that *Nakhla was an occupant of the taxicab at the time of the second impact through the submission of Nakhla's examination under oath testimony, which indicated that he alighted from the taxicab after the first impact to determine whether it had been damaged* (*see Matter of Nassau Ins. Co. [Maylou],* 103 A.D.2d 780, 477 N.Y.S.2d 415; *Estate of Cepeda v. United States Fid. & Guar. Co.,* 37 A.D.2d 454, 455, 326 N.Y.S.2d 864; *State–*

*Wide Ins. Co. v. Murdock*, 31 A.D.2d 978, 299 N.Y.S.2d 348, *affd.* 25 N.Y.2d 674, 306 N.Y.S.2d 678, 254 N.E.2d 908)."

Id. (emphasis added).

In Talmadge, 206 A.D.3d at 832, 168 N.Y.S.3d at 344-345, decided June 15, 2022, the Appellate Division, Second Department held a passenger who alighted when the driver stopped and got out, but remained near the vehicle was "*'occupying' the vehicle within the meaning of the SUM endorsement at the time of the accident*":

> "The SUM endorsement in the subject policy, consistent with the statutory requirement, defines "occupying" as "in, upon, entering into, or exiting from a motor vehicle" (*see* Insurance Law § 3420[f][3]). "*A person remains an occupant of a vehicle, even if that person is not in physical contact with the vehicle, 'provided there has been no severance of connection with it, his [or her] departure is brief and he [or she] is still vehicle-oriented with the same vehicle*'" (*J. Lawrence Constr. Corp. v. Republic Franklin Ins. Co.*, 145 A.D.3d 761, 763, 43 N.Y.S.3d 452, quoting *Matter of Rice v. Allstate Ins. Co.*, 32 N.Y.2d 6, 11, 342 N.Y.S.2d 845, 295 N.E.2d 647).
>
> Here, even considering surveillance evidence challenged by Talmadge, *the plaintiff failed to demonstrate, as a matter of law, that Talmadge was not "occupying" the vehicle within the meaning of the SUM endorsement at the time of the accident* (*see Matter of Utica Mut. Assur. Co. v. Steward*, 179 A.D.3d 815, 817, 117 N.Y.S.3d 687). The evidence submitted in support of the motion demonstrated that Talmadge was in the rear passenger seat of the vehicle, then being operated by Holden, when Holden stopped the car and exited, leaving the driver's side door open and the engine running. ... *Talmadge exited the vehicle after Holden temporarily exited, he remained beside it, and was hit when Shimer unexpectedly entered the car and began to drive it away* (*see Matter of Government Empls. Ins. Co. v. Nakhla*, 140 A.D.3d 762, 764, 32 N.Y.S.3d 614; *Estate of Cepeda v. United States Fid. & Guar. Co.*, 37 A.D.2d 454, 456, 326 N.Y.S.2d 864)."

Id. (emphasis added).

"*In accordance with the liberal interpretation afforded the term 'occupying'*" (Rosado, 71 A.D.3d at 860-861, 897 N.Y.S.2d at 173-174), as testimony that a driver "*exited from his parked vehicle intending to help his friend make a delivery of food he was unloading from a*

*minivan that was parked across the street,*" but "*When his friend declined his offer of help, the appellant turned and walked back to his vehicle,*" at which point he was struck by another vehicle, it was determined that "*Issues of fact exist as to whether the appellant had departed from his vehicle incident only to some temporary interruption in the vehicle's journey so that his original occupancy could be deemed continuing in nature*" (Landau, 27 A.D.3d at 477-478. 811 N.Y.S.2d at 427-428), clearly, Mr. Polanco's testimony and attestation in interrogatory responses herein indicating, "I unloaded the products I was to deliver from my truck onto a hand truck … I intended to immediately return to my vehicle as quickly as possible, at all times remaining in the immediate vicinity of my vehicle … Upon completion of the objective of the delivery, a brief interruption of my journey, I intended to resume my place in the vehicle and continue my delivery route," raises similar questions of fact on this issue, mandating denial of PROTECTIVE INSURANCE COMPANY's motion for summary judgment and the holding of an evidentiary hearing or trial to determine the issue. See Landau, 27 A.D.3d at 477-478. 811 N.Y.S.2d at 427-428; Rice, 32 N.Y.2d at 10-11, 342 N.Y.S.2d at 848-849, 295 N.E.2d at 649; Lecei, 65 A.D.3d at 931-932, 885 N.Y.S.2d at 286.

The plaintiff's interpretation of the foregoing precedents as holding that a stop to make a delivery constitutes a "*temporary interruption at a place other than his destination, [where the occupant] remains in the immediate vicinity of the vehicle and there is every reason to believe that, had it not been for the accident, he would shortly have resumed his place in the vehicle*" (Cepeda's Estate, 37 A.D.2d at 456, 326 N.Y.S.2d at 866; Landau, 27 A.D.3d at 477-478. 811 N.Y.S.2d at 427-428; Rice, 32 N.Y.2d at 10-11, 342 N.Y.S.2d at 848-849, 295 N.E.2d at 649;

Lecei, 65 A.D.3d at 931-932, 885 N.Y.S.2d at 286;) is confirmed by a comparison of Landau, 27 A.D.3d at 477-478. 811 N.Y.S.2d at 427-428, where *"Issues of fact exist as to whether the appellant had departed from his vehicle incident only to some temporary interruption in the vehicle's journey so that his original occupancy could be deemed continuing in nature,"* with Faragon v. Am. Home Assur. Co., 52 A.D.3d 917, 918-919, 859 N.Y.S.2d 301, 303 (3d Dep't 2008), where the driver making the delivery was determined not to be an occupant as a matter of law.

As was demonstrated, in Landau, 27 A.D.3d at 477-478. 811 N.Y.S.2d at 427-428 where the driver *"exited from his parked vehicle intending to help his friend make a delivery of food he was unloading from a minivan that was parked across the street,"* but *"When his friend declined his offer of help, the appellant turned and walked back to his vehicle,"* he was struck by another vehicle, it was determined that *"Issues of fact exist as to whether the appellant had departed from his vehicle incident only to some temporary interruption in the vehicle's journey so that his original occupancy could be deemed continuing in nature"* which were not amenable to summary disposition.

On the other hand, in Faragon, 52 A.D.3d at 918-919, 859 N.Y.S.2d at 303, where after a 20-30 minute unloading process, he was 10-15 minutes into *"train[ing] the person renting it on the proper operation of the equipment, a procedure he estimated to take 30 to 35 minutes,"* the Appellate Division determined *"Under such circumstances, he was no longer "occupying" his employer's vehicle"*:

> "Here, plaintiff was off-loading a 44,000 pound, 50–to –55 FOOT-long boom lift from a 70–foot tractor-trailer. The procedure involved many steps, including setting out safety cones, unchaining the boom lift, folding out and inserting pins in the jib, inspecting the

basket, lowering the trailer, backing the machine off the trailer, and securing and extending axle shifts. *Plaintiff had completed these steps, which he testified at his deposition typically took 20 to 30 minutes.* He further testified that, after removing and readying the boom lift, he next *trains the person renting it on the proper operation of the equipment, a procedure he estimated to take 30 to 35 minutes*. He recalled during his testimony that, in the current situation, *he had been training the person who was going to operate the equipment for 10 to 15 minutes when the accident occurred*. Although the tractor-trailer reportedly remained running during the entire time and plaintiff's affidavit sets forth a more condensed time frame than his deposition for his activities at the site, it is inescapable that he was no longer vehicle-oriented. *His absence from the vehicle was not intended to be brief and, at the time of the accident, he was engaged in instructing the lessee about the operation of the delivered equipment. Under such circumstances, he was no longer "occupying" his employer's vehicle* (see *Matter of Martinez*, 295 A.D.2d 277, 278, 744 N.Y.S.2d 176 [2002]; *Matter of State Farm Auto. Ins. Co. v. Antunovich*, 160 A.D.2d 1009, 1010, 555 N.Y.S.2d 231 [1990]; *cf. Matter of Travelers Ins. Co. [Youdas]*, 13 A.D.3d at 1045–1046, 787 N.Y.S.2d 475; *Matter of Nassau Ins. Co. [Maylou]*, 103 A.D.2d 780, 780, 477 N.Y.S.2d 415 [1984]; *State–Wide Ins. Co. v. Murdock*, 31 A.D.2d 978, 978–979, 299 N.Y.S.2d 348 [1969], *affd.* 25 N.Y.2d 674, 306 N.Y.S.2d 678, 254 N.E.2d 908 [1969])."

Id. (emphasis added).

As the facts of the instant action are far closer to the facts of Landau, 27 A.D.3d at 477-478. 811 N.Y.S.2d at 427-428, where the driver exited to assist with a delivery across the street, but intended to return to his vehicle and continue with his journey, and Lecei, 65 A.D.3d at 931-932, 885 N.Y.S.2d at 286, where after alighting from the truck, the driver had not yet placed cones or reached the opposite curb, which were not amenable to summary disposition, than to the facts of Faragon, 52 A.D.3d at 918-919, 859 N.Y.S.2d at 303, where an accident occurred 30-45 minutes after his leaving the truck, so *"His absence from the vehicle was not intended to be brief and, at the time of the accident, he was engaged in instructing the lessee about the operation of the delivered equipment,"* the defendant's motion for summary judgment must properly be denied, and the issues of fact determined at a hearing or trial.

16

The plaintiff's interpretation of the foregoing precedents as holding that a stop to make a delivery constitutes a *"temporary interruption at a place other than his destination, [where the occupant] remains in the immediate vicinity of the vehicle and there is every reason to believe that, had it not been for the accident, he would shortly have resumed his place in the vehicle"* (Cepeda's Estate, 37 A.D.2d at 456, 326 N.Y.S.2d at 866; Landau, 27 A.D.3d at 477-478. 811 N.Y.S.2d at 427-428; Rice, 32 N.Y.2d at 10-11, 342 N.Y.S.2d at 848-849, 295 N.E.2d at 649; Lecei, 65 A.D.3d at 931-932, 885 N.Y.S.2d at 286;) is also in keeping with the New York Court of Appeals and Appellate Division precedents holding *"loading and unloading of a vehicle constitutes use or operation within the meaning of Vehicle and Traffic Law § 388(1)"* and *"regulations interpreting the Motor Vehicle Financial Security Act (Vehicle and Traffic Law § 310 et seq.)"* *"required this accident to be covered under [the vehicle owner's] policy from the standpoint of [the vehicle owner's] liability* [citations omitted]." Argentina v. Emery World Wide Delivery Corp., 93 N.Y.2d 554, 559, 715 N.E.2d 495, 497-498, 693 N.Y.S.2d 493, 495 (1999); see Hertz Corporation v. Bellin, 28 A.D.2d 1101, 284 N.Y.S.2d 140, 141 (1st Dep't), aff'd, 22 N.Y.2d 736, 292 N.Y.S.2d 117, 239 N.E.2d 211 (1968); Wagman v. American Fidelity & Casualty Co., 304 N.Y. 490, 494-495, 109 N.E.2d 592, 594 (1952); Perrin v. Chase Equipment Leasing, Inc., 9 A.D.3d 839, 840, 780 N.Y.S.2d 256, 258 (4th Dep't 2004); Northern Ins. Co. of New York v. TIG Ins. Co., 2 A.D.3d 422, 423-423, 767 N.Y.S.2d 809, 809-810 (2d Dep't 2003); Paul M. Maintenance, Inc. v. Transcontinental Ins. Co., 300 A.D.2d 209, 210, 755 N.Y.S.2d 3, 4 (1st Dep't 2002); Hudson River Concrete Products Corporation v. Callanan Road Improvement Company, 5 A.D.2d 49, 51, 168 N.Y.S.2d 801, 803-804 (3d Dep't 1957).

In Hudson River Concrete Products Corporation, 5 A.D.2d at 51, 168 N.Y.S.2d at 803-804, the Appellate Division, citing Wagman, 304 N.Y. at 494-495, 109 N.E.2d at 594, held that pursuant to New York State law, the terms "loading" and "unloading" a vehicle are broadly construed to include *"the complete operation, in some cases quite removed from the vehicle itself"*:

> "The other, and more serious question raised by the Insurance Company, is that the property damage did not arise out of the 'ownership, maintenance or use' of the vehicle and was not connected with the loading or unloading thereof within the policy coverage. Although there are numerous authorities on this subject in other jurisdictions with varying interpretations of similar policies, we need look no further than the courts of New York State. *New York courts have construed such policies liberally. In this State coverage is definitely not limited to damage caused by the use of the vehicle as a vehicle, nor to its operation along a highway, nor to damage caused by unloading immediately and physically connected with the vehicle. Loading and unloading includes the complete operation, in some cases quite removed from the vehicle itself.* In Wagman v. American Fidelity & Cas. Co., 304 N.Y. 490, 109 N.E.2d 592, the insured trucker was waiting at the curb while employees of the customer brought racks of clothes to the truck for loading. A supervisory employee of the customer, who was merely checking the number of garments loaded but not moving any, *bumped into a pedestrian* while on his way back into the store. It was held that the policy on the truck covered the injury to the pedestrian as included within the 'entire operation' of loading. See also B & D Motor Lines, Inc., v. Citizens Casualty Co., 181 Misc. 985, 43 N.Y.S.2d 486, affirmed 267 App.Div. 955, 48 N.Y.S.2d 472, where a carton fell from a push cart inside a building and a considerable distance from the unloading vehicle. See Kemnetz v. Galluzzo (Galluzzo v. Commercial Ins. Co.), 8 Misc.2d 513, 163 N.Y.S.2d 998(2)."

Id. (emphasis added).

As the New York Court of Appeals interprets "use" and "occupancy" of a vehicle for purposes of Vehicle and Traffic Law § 388(1) and the regulations interpreting the Motor Vehicle Financial Security Act (Vehicle and Traffic Law § 310 *et seq.*) as including the entire course of a delivery and intended return to the vehicle, for purposes of SUM coverage, a delivery should similarly be considered a *"depart[ure] from his vehicle incident only to some temporary*

*interruption in the vehicle's journey so that his original occupancy could be deemed continuing*

*in nature*" (Landau, 27 A.D.3d at 477-478. 811 N.Y.S.2d at 427-428; see Rice, 32 N.Y.2d at 10-

11, 342 N.Y.S.2d at 848-849, 295 N.E.2d at 649; Lecei, 65 A.D.3d at 931-932, 885 N.Y.S.2d at

286;).    The defendant's motion for summary judgment must be denied, and the matter

determined at a trial or evidentiary hearing.

## CONCLUSION

Wherefore, plaintiff respectfully requests that the Court issue an Order denying defendant's

motion pursuant to Federal Rule of Civil Procedure 56 seeking summary judgment, along with such

other and further relief as this Court deems just and proper.

Dated:  Brooklyn, New York
         May 6, 2024

Respectfully submitted,
FORTUNATO & FORTUNATO, PLLC

By: Ronald W. Gill, Esq. (RG-7339)
Attorneys for Plaintiff
26 Court Street - Suite 1301
Brooklyn, New York 11242
Phone: (718) 858-4366
Fax No.: (718) 852-6432
Email: r.gill@fortunatolawfirm.com